

FILED

9:58 am, 10/10/25

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ANTONIO ALEJANDRO GARCIA MORAO, | |
| Plaintiff, | |
| VS. | Case No. 25-CV-00226-ABJ |
| KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, | |
| TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement, | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| PAMELA BONDI, *in her official capacity as the United States Attorney General,* | |
| MICHAEL V. BERNACKE, *in his official capacity as ICE Field Officer Director,* | |
| ANDY COPP, *in his official capacity as the warden of the Evanston, Wyoming Detention Facility* | |
| Respondents. | |

**ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

1

THIS MATTER is before the Court on an Emergency Motion for Temporary Restraining Order and Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Antonio Alejandro Garcia Morao. [ECF 1 & 8] Petitioner initially filed his Motion for Temporary Restraining Order and a Petition for Writ of Habeas Corpus in the United States District Court for the District of Utah on September 24, 2025. [ECF 1 & 2] The court in Utah entered an Order to Show Cause and required the respondents to file a response within five days of the order. [ECF 4] The court also set a hearing for October 2, 2025, enjoined respondents from removing Petitioner from the United States, and ordered respondents not to move Petitioner out of the state of Utah. [ECF 4] The court in Utah held a status conference on September 26, 2025, during which the respondents informed the court that Petitioner was transferred to Evanston, Wyoming before he filed his habeas petition and likely would be transferred a second time to the Natrona County jail on September 28, 2025. [ECF 9] At the status conference, the Department of Homeland Security stipulated it would not remove Petitioner from the United States. [ECF 9] The court transferred Petitioner's case to the District of Wyoming. [ECF 10 & 11] Petitioner filed an Amended Petition on September 26, 2025. [ECF 8] Upon transfer to this Court, the Court entered an Order to Show Cause, requiring Respondents to show cause why the amended petition should not be granted. [ECF 12] The Court set a briefing schedule and hearing pursuant to 28 U.S.C. § 2243. [ECF 12] The Court held a hearing on Petitioner's motion and petition on October 5, 2025.

## BACKGROUND

Mr. Garcia Morao entered the United States on May 23, 2023, as part of the Venezuelan Humanitarian Parole Program. [ECF 8 p.2] His parole was for two years—until May 21, 2025. [ECF 25 ex. 1 p. 2] Mr. Garcia Morao is married to a United States Citizen and on April 10, 2024, she filed a relative petition on Petitioner's behalf with the United States Citizenship and Immigration Services (USCIS). [ECF 25 ex. 1 p. 2] Mr. Garcia Morao filed an application for adjustment of status on the same date. [ECF 25 ex. 1 p. 2] On September 18, 2025, police officers responded to a domestic disturbance and charged Mr. Garcia Morao with four misdemeanor offenses. [ECF 8 p. 2] On September 21, 2025, Immigrations and Customs Enforcement (ICE) officers interviewed Mr. Garcia Morao at the Weber County Jail in Ogden, Utah. [ECF 25 ex 1 p. 2] At that time, ICE determined Mr. Garcia Morao did not possess valid immigration documents. [ECF 25 ex. 1 p. 2] On September 24, 2025, after he was released from jail, ICE officers detained Petitioner pursuant to 8 U.S.C. § 1225. [ECF 25 ex. 1 p. 3] At the same time, ICE issued a Notice to Appear (NTA), initiating immigration court removal proceedings under 8 U.S.C. § 1229a. [ECF 25 ex. 1 p. 3] The NTA classified Petitioner as an "arriving alien" and charged him with being inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). [ECF 25 ex. 1 p. 3]

## DISCUSSION

Mr. Garcia Morao seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and emergency relief in the form of a Temporary Restraining Order and a Preliminary Injunction. A federal court may grant habeas relief to an immigration petitioner if it finds

they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court's ruling on his habeas petition is dispositive of all issues.

## *I. Amended Petition [ECF 8], Response to Order to Show Cause [ECF 25], and Petitioner's Reply [ECF 27]*

In his Amended Petition for Writ of Habeas Corpus, Mr. Garcia Morao asserts his Due Process rights are violated by his ICE detention. [ECF 8 p. 6] Mr. Garcia Morao seems to argue he could only be detained under 8 U.S.C. § 1226(a). [ECF 8 p. 5] It appears Mr. Garcia Morao initially believed his detention was because of his misdemeanor charges and he argued those charges did not justify detention under the Immigration and Nationality Act. [ECF 8 pp. 5-6, 10-11] Next, he argues his presence in the United States is lawful because he filed for an adjustment of status over a year before his parole expired. [ECF 8 p. 8, 12] Finally, he argues he legally entered the United States and therefore should not be considered an "arriving alien," therefore, DHS cannot rely on INA § 212(a)(2)(A)(i) or § 212(a)(7). [ECF 8 p. 13] He contends his detention violates Due Process and the Immigration and Nationality Act and seeks immediate release from detention, attorney's fees, and injunctive relief as necessary to remedy the harms to Petitioner. [ECF 8 p. 13]

In their Response to the Court's Order to Show Cause, Respondents contend Mr. Garcia Morao is properly categorized as an "arriving alien" and is therefore subject to detention under 8 U.S.C. § 1225(b)(2)(A). [ECF 25 p. 7] Respondents argue noncitizens who are paroled into the United States, such as Petitioner, do not lose their designation as "arriving aliens" because their parole is not regarded as admission to the United States.

4

[ECF 25 pp. 7-8] According to Respondents, this "entry fiction" means that, even though parolees are physically allowed into the country, they are considered legally detained at the border. [ECF 25 p. 8] Thus, "when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Respondents contend this means Mr. Garcia Morao returned to the status of someone "seeking admission" when his parole expired. [ECF 25 p. 8]

Respondents assert that Mr. Garcia Morao's detention is required by statute and comports with Due Process. [ECF 25 p. 9] They argue that, as an "arriving alien" Petitioner has no due process rights beyond those afforded by statute. [ECF 25 p. 11] They contend Mr. Garcia Morao will receive all the Due Process protections granted by the removal process and will remain detained for the proceeding because § 1225(b)(2)(A) requires it. [ECF 25 p. 13]

In Reply, Mr. Garcia Morao largely abandons the arguments he made in his Amended Petition. Instead, he argues the indefinite nature of the detention under 8 U.S.C. § 1225(b)(2)(A) violates his right to Due Process. [ECF 27 p. 3] Mr. Garcia Morao asserts he is a member of the class litigating the Government's pause in adjudicating adjustment of status applications in the case *Svitlana Doe v. Noem*, 25-CV-10495-IT (D. Mass. Oct. 3, 2025). He contends USCIS indefinitely paused its review of adjustment of status applications for individuals who entered the United States through the Venezuelan Humanitarian Parole Program. [ECF 27 pp. 3, 5-6] At the hearing, he argued through counsel that an Immigration Judge will not hear his case when there is an adjustment of status application pending. Therefore, the indefinite pause on the adjudication of

5

applications will result in indefinite detention for him. Mr. Garcia Morao further argues DHS is violating his Sixth and Fifth Amendment constitutional rights because he cannot easily communicate with his criminal defense attorney or defend against the criminal charges brought against him in the state of Utah. [ECF 27 pp. 2-3]

Mr. Garcia Morao filed a further reply. [ECF 29] In his second reply he contends his detention under § 1225(b) is unconstitutional because it is indefinite. [ECF 29 p. 2] He directs the Court to a decision out of the Western District of Pennsylvania where the court determined an arriving alien held under § 1225(b) had the right to a bond hearing when the detention became unreasonable. *A.L. v. Oddo*, 761 F.Supp.3d 822 (W.D. Pa. 2025). He argues the *A.L.* case is comparable, and, for him, the indeterminacy of the detention renders it unconstitutional. [ECF 29 p. 3] He urges the Court to apply the four-factor test from *German Santos v. Warden Pole County Corr. Facility*, 965 F.3d 203, 210 (3rd Cir. 2020). He contends the test demonstrates his indeterminate detention is unreasonable and, therefore, he is entitled to immediate release.

### B. Application of 8 U.S.C. § 1225(b)(2)(A) to Petitioner

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens,

6

whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. 678, 693, 121 S. Ct. 2491, 2500, 150 L. Ed. 2d 653 (2001).

Nationwide, noncitizens have been litigating the applicability of 8 U.S.C. § 1225(b)(2) to their cases. Often, these cases involve individuals seeking asylum who were detained and then conditionally paroled pending an adjudication on the merits of their asylum application. *See e.g., Paula Andrea Salcedo Aceros v. Polly Kaiser et al.*, 25-CV-06924-EMC (N.D. Cal. Sept. 12, 2025). In those cases, the courts have nearly uniformly rejected the Government's argument that § 1225(b)(2) applies as opposed to §1226(a). *Id.* at ECF 4, Order Granting Preliminary Injunction, pp. 14-15 ("courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like Ms. Salcedo Aceros, living in the interior of the country") (compiling cases). While Mr. Garcia Morao seemed to make this argument in his Amended Petition, he abandoned it his reply and conceded he was properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A).

Under 8 U.S.C. § 1182(d)(5)(A),

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall

7

> continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Because Mr. Garcia Morao's parole status has lapsed, he is considered an "arriving alien." An "arriving alien" is

> an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1.2. "[P]arole creates something of legal fiction; although a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied." *Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022); *see also*, *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1168-69 (D.N.M. 2014), motion for relief from judgment granted, No. CIV 14-769 JCH/CG, 2015 WL 7454248 (D.N.M. Sept. 23, 2015) (describing the "entry fiction"). The United States District Court for the District of Colombia recently explained what happens to parolees when their parole expires: "the noncitizen is physically brought back into immigration detention ('custody') and then legally continues to be treated as an 'applicant for admission,' because his parole itself did not constitute an admission." *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *24 (D.D.C. Aug. 1, 2025).

Here, Mr. Garcia Morao arrived at a port of entry and was paroled into the United States. [ECF 2 ex. 1] Thus, because his parole has expired, he is returned to the "custody

from which he was paroled." 8 U.S.C. § 1182 (d)(5)(A). Because Mr. Garcia Morao remains a noncitizen seeking admission to the United States, he is an arriving alien and, as he concedes, subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### *C. Indefinite nature of detention—Due Process unreasonableness determination*

#### 1. *Svitlana v. Doe*

Despite conceding 8 U.S.C. § 1225(b)(2)(A) applies to him, Petitioner nevertheless argues detention under that statute violates his constitutional Due Process rights. Mr. Garcia Morao asserts he is a class member in the case *Svitlana Doe v. Noem*, 25-CV-19495-IT, (D. Mass. October 7, 2025). In *Svitlana*, a group of individuals from different humanitarian parole programs sued the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, United States Citizenship and Immigration Services, and the President of the United States (the Government) for relief from immigration policy changes enacted by the Trump administration. *Id.* at ECF no. 1. The district court entered an order granting in part the plaintiff's emergency motion for injunctive relief. *Id.* at ECF no. 97. In that order, the court stayed the Government's mass revocation of humanitarian parole for individuals paroled into the country under programs for noncitizens from Cuba, Haiti, Nicaragua, and Venezuela (CHNV programs) prior to the noncitizen's originally stated parole end date without a case-by-case review. *Id.* at ECF no. 97 p. 40. The Government appealed this decision and took the unusual step of asking the Supreme Court to stay the order pending review from the First Circuit. *Svitlana Doe. v. Noem*, Supreme Court Docket No. 24A1079 (May 30, 2025). The Supreme Court granted the application—staying the case while the First Circuit reviewed the merits and then, if

9

certiorari is granted, by the Supreme Court. *Id.* at opinion. This allowed the Government's mass parole termination to continue. On September 12, 2025, the First Circuit reversed the district court's order. *Svitlana Doe v. Noem*, 25-CV-19495-IT at ECF no. 169.

Petitioner maintains that this decision is crucial to his case because it means adjudication of his application for adjustment of status is indefinitely stayed pending resolution of the case in the District of Massachusetts. [ECF 27 p. 5; ECF 29] However, Petitioner misunderstands the posture of the *Svitlana Doe* case. The stay implemented by the district court, execution of which was later stayed by the Supreme Court and reversed by the First Circuit, applied only to the termination of humanitarian parole for individuals paroled under the CHNV programs (among other humanitarian parole programs). *Doe v. Noem*, No. 25-1384, 2025 WL 2630395, at *5 (1st Cir. Sept. 12, 2025). Mr. Garcia Morao is not contesting the termination of his parole.

Instead, Mr. Garcia Morao admits his parole expired but maintains *Svitlana Doe* applies to his case because the USCIS placed an administrative hold on reviewing applications for adjustment of status by CHNV parolees. The District of Massachusetts did address this issue, and it issued an order staying the administrative hold and requiring USCIS to begin processing applications. *Svitlana Doe v. Noem*, 25-CV-19495-IT at ECF no. 107. On July 28, 2025, the Government issued a response to the Court's order to show cause, in which it stated it was, once again, reviewing applications to USCIS from CHNV program parolees and starting with diversity visas. *Id.* at ECF no. 160 ex. 1. The Government appealed that order. But, there is nothing in the docket for either the District of Massachusetts or the First Circuit indicating the court's order is stayed pending appeal.

10

*Id.* at 161. Thus, it appears that USCIS is once again processing CHNV non-parole benefits applications while the appeal is pending.

### 2. Unreasonableness of detention

Petitioner maintains the indeterminate nature of his detention violates Due Process. However, the cases to which Petitioner cites do not stand for that proposition. [ECF 29 p. 3] In *A.L.*, the Government detained the petitioner for ten months pursuant to §1225(b) while his appeal from the denial of his asylum application was pending. *A.L.*, 761 F. Supp. 3d at 26. The court held "an arriving alien such as Petitioner has a constitutional due process right to a bond hearing *once his detention becomes unreasonable* to the same extent as an alien who is subject to removal under § 1226(c)." *Id.* at 825–26 (emphasis added). The court then looked to other courts to see what range of detention periods was deemed unreasonable. *Id.* (finding courts found mandatory detention suspect after five months). The case is further distinguishable because the court in *A.L.* was looking at the petitioner's detention after the petitioner's initial application for asylum was denied. *Id.* That is not the situation in this case. Here, Mr. Garcia Morao has been detained by ICE since September 24, 2025—slightly over two weeks and has a removal proceeding scheduled for October 28, 2025, in front of an immigration judge. [ECF 25 ex. 1]

Additionally, none of the cases considering whether a §1225(b)(2) detention is unreasonable make a finding of unreasonableness based on such a short period of time or the indeterminate nature of the detention. *See e.g., Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (petitioner detained for more than eighteen months under §1225(b) entitled to individualized bond hearing); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332

11

(M.D. Pa. 2018) (petitioner detained for nearly two years entitled to an individualized bond hearing before an immigration judge); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *2 (S.D.N.Y. Aug. 20, 2018) (petitioner detained for nine months entitled to individualized bond hearing). Again, Mr. Garcia Morao has been detained for slightly more than two weeks which is well short of any case finding an unreasonable duration.

Petitioner argues his detention satisfies both the *German Santos* reasonableness framework and the *Banda* factors. *German Santos*, 965 F.3d 203; *Banda,* 385 F. Supp. 3d at 1106. Petitioner cannot demonstrate unreasonableness under either test. The *German Santos* test states the most important factor is the duration of the detention. 965 F.3d at 211. Next, courts are to weigh the duration of the detention against how long detention is likely to continue, the reasons for the delay, and whether the conditions of confinement are "meaningfully different from criminal punishment." *Id.* (internal citations omitted). Here Mr. Garcia Morao has been detained for slightly more than two weeks. Thus, the first factor weighs against granting his habeas petition.

Next, Petitioner argues his detention will continue indefinitely because immigration judges traditionally decline to reach a removal decision when a noncitizen has a pending application for adjustment of status. However, this assertion is purely speculative there is nothing in the immigration statutes requiring immigration judges to delay reaching a decision when the noncitizen has a pending application for adjustment of status. The USCIS handbook[1] makes clear that a noncitizen is still removable if they are not in a lawful

---

[1] The cited portion of the USCIS Policy Manual is available online at https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-3 and reads: "A pending application to extend or change status (Form I-129 or Form I-539), a pending adjustment application, or a pending petition does not confer lawful immigration status on an applicant. In

12

immigration status, even if they timely filed an application for adjustment of status. USCIS Policy Manual, Volume 7, Chapter 3, Section E. The timely filed application provides the noncitizen with lawful presence, preventing future immigration bars for being unlawfully present in the United States, but not lawful status. *Id.* Further, the Court's understanding of the *Svitlana Doe* proceedings is that USCIS is once again processing applications. Thus, Petitioner's assertion that his application is on an indefinite administrative pause is inaccurate. Finally, if the preceding nine months have demonstrated anything, it is that courts cannot rely on what immigration officials have traditionally done as a predictor for what will occur moving forward.

The third *German Santos* factor likewise weighs against an unreasonableness finding. Thus far, there has been little to no delay—Mr. Garcia Morao was given a removal hearing date within approximately one month from the start of his detention. Fourth, there is no denying that Mr. Garcia Morao's detention looks like a criminal detention. He is detained at the Natrona County jail amongst people charged with and convicted of crimes. However, all the other factors weigh against a finding of unreasonableness. Thus, Mr. Garcia Morao is not entitled to relief under the *German Santos* test.

The *Banda* factors require the same result. Those factors are:

> 1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6)

---

addition, a pending application or petition does not automatically afford protection against removal if the alien's status expires after submission of the application. The alien may have no actual lawful status in the United States and may be subject to removal proceedings unless and until the extension of stay (EOS) application, change of status (COS) application, adjustment application, or petition is approved."

13

> the likelihood that the removal proceedings will result in a final order of removal

*Banda*, 385 F. Supp. 3d at 1106. Here, the Court already evaluated the first five factors and found only one, the conditions of detention, weighed in Mr. Garcia Morao's favor. As for the last factor,

> Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered...[b]ut where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'

*Id.* at 1120. "Courts have consistently found this final factor neutral." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *8 (W.D. Wash. Aug. 7, 2025). Here, Mr. Garcia Morao has a pending application for adjustment of status. However, the Court cannot predict what will occur with his application or with the removal hearing. The last factor is neutral and only one factor weighs in his favor. Thus, Mr. Garcia Morao's detention is not unreasonable under the *Banda* test.

The Government discussed the Supreme Court case *Jennings v. Rodriguez* during the hearing, thus the Court will briefly address its applicability to this case. *Jennings v. Rodriguez*, 538 U.S. 281, 138 S.Ct. 830 (2018). In *Jennings*, the Supreme Court considered a Ninth Circuit decision which applied the canon of constitutional avoidance and interpreted the immigration statutes as requiring periodic bond hearings every six months for individuals subject to mandatory detention. *Id.* at 286. The Supreme Court reversed, concluding the Ninth Circuit's interpretation of the statutes was implausible. *Id.*

14

at 296. It determined the statutory language of § 1225(b)(2)(A) mandated detention for a specified time—until the end of the removal proceedings. *Id.* at 299. However, the Supreme Court expressly declined to consider the constitutional due process question. *Id.* at 312. As cited above, courts considering detention under § 1225(b)(2) have determined the Due Process clause requires an individualized bond hearing when the detention is unreasonable. Here, Mr. Garcia Morao asserted his detention violates the Due Process Clause, thus *Jennings* is not directly controlling of this issue.

Mr. Garcia Morao has been in immigration detention for two weeks and has not yet seen an immigration judge for his removal proceedings. He cannot, at this time, establish that his detention is unreasonable. If Mr. Garcia Morao's detention later becomes unreasonable, there is nothing preventing him from refiling his petition. At this point, Mr. Garcia Morao's immigration detention does not violate his Due Process rights.

### C. Immigration detention's impact on other constitutional rights

Mr. Garcia Morao argues his immigration detention violates his Sixth and Fifth Amendment rights because it interferes with his ability to adequately defend against the criminal charges brought against him by the state of Utah. [ECF 27 pp. 2-3] Mr. Gacia Morao directed this Court to very little case law in support of his position—relying primarily on the seminal case *Gideon v. Wainwright*, 372 U.S. 225 (1963). It is Petitioner's responsibility to demonstrate his detention violates his constitutional rights and a passing reference to the right to counsel is insufficient.

Further, Mr. Garcia Morao's position is not supported by existing comparable case law. In *United States v. Veloz-Alonso*, the Sixth Circuit determined "ICE may fulfill its

15

statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA [Bail Reform Act] release determination [by a United States Magistrate Judge]." 910 F.3d 266, 270 (6th Cir. 2018). Every circuit court addressing the interplay of ICE detention and the Bail Reform Act has recognized ICE can detain a noncitizen even when a United States Magistrate Judge has ordered them released pending trial. *See United States v. Barrera-Landa*, 964 F.3d 912, 919 (10th Cir. 2020) (compiling cases). Courts have found Fifth and Sixth Amendment violations where ICE removes a noncitizen from the country during the pendency of criminal proceedings. *United States v. Escobedo-Molina*, No. 2:25-CR-01430-MIS, 2025 WL 1918035, at *3 (D.N.M. July 11, 2025) ("Defendant's deportation has, to put it simply, wrought havoc on his Fifth and Sixth Amendment rights."); *United States v. Castillo*, 537 F. Supp. 3d 120, 128 (D. Mass. 2021) ("The court finds that Defendant's absence from the District of Massachusetts, where he faces charges and where he allegedly committed the charged offense, interferes with his ability to consult with counsel and prepare a defense, in violation of the Sixth Amendment, and that Defendant's inability to do so is solely attributable to the government.). Here, Mr. Garcia Morao is still in the United States, and he has not demonstrated he is unable to communicate with his criminal attorney—he has only speculated his detention would interfere with his ability to do so. He has not demonstrated his ICE detention violates his Fifth and Sixth amendment constitutional rights.

## CONCLUSION

Mr. Garcia Morao moved for emergency relief in the form of a preliminary injunction and temporary restraining order. Because the Court determines he is not entitled

to relief on the merits of his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, it need not address the requirements for the emergency relief.

**NOW, THEREFORE, IT IS ORDERED** Mr. Garcia Morao's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF 8] is **DENIED.**

**IT IS FURTHER ORDERED** the Court's orders that Mr. Garcia Morao not be transferred out of the District of Wyoming or removed from the country are **VACATED.**

Dated this 9Th day of October, 2025.

Alan B. Johnson
United States District Judge